No. 25-11881

# In the United States Court of Appeals for the Eleventh Circuit

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, ET AL.,
*Plaintiffs-Appellees*,

V.

JAMES UTHMEIER, IN HIS OFFICIAL CAPACITY AS FLORIDA ATTORNEY GENERAL,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:24-cv-00438-MW-MAF

## APPELLANT'S REPLY IN SUPPORT OF MOTION TO STAY INJUNCTION PENDING APPEAL

PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*kevin.golembiewski@myfloridalegal.com*

JAMES UTHMEIER
  *Attorney General of Florida*

JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
KEVIN A. GOLEMBIEWSKI
  *Senior Deputy Solicitor General*
DARRICK W. MONSON
  *Deputy Solicitor General*
ROBERT S. SCHENCK
  *Assistant Solicitor General*
ANITA PATEL
  *Special Counsel*

June 23, 2025

*Counsel for Appellant*

*CCIA v. Uthmeier*
*Eleventh Circuit Case No. 25-11881*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant certifies that, to the best of his knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1. Allen, Tony
2. Alter, Adam
3. Bell, Daniel
4. Boyle, David
5. Cleland, Bartlett
6. Clement, Paul D.
7. Computer & Communications Industry Association
8. Costello, David M.
9. DeMott, Joseph J.
10. DeSousa, Jeffrey Paul
11. Fitzpatrick, Hon. Martin A.
12. Golembiewski, Kevin A.
13. Guard, John M.
14. Kilby, Douglas L.
15. Lamia, Christine

16. Mead, Grace Lee

17. Monson, Darrick W.

18. Moody, Ashley

19. Murphy, Erin

20. Murphy, Hannah E.

21. NetChoice, LLC

22. Pallaki, Mitchell K.

23. Patel, Anita

24. Schenck, Robert S.

25. Schruers, Matthew

26. Spears, Sara E.

27. Twenge, Jean

28. Uthmeier, James

29. Veitch, Alexandra N.

30. Waczewski, James

31. Walker, Hon. Mark

32. Whitaker, Henry C.

33. Wynosky, Kevin J.

34. Xi, James

*CCIA v. Uthmeier*
*Eleventh Circuit Case No. 25-11881*

Snap, Inc. (SNAP), Meta Platforms, Inc. (META), and Alphabet Inc. (GOOGL) are publicly traded companies that have an interest in the outcome of this case or appeal.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.   Florida is likely to succeed on appeal. .......................................................... 2

    A.   Plaintiffs lack prudential standing to assert the First Amendment rights of children. ......................................................... 2

    B.   *Younger* bars Plaintiffs' First Amendment challenge. .................... 4

    C.   HB3 does not violate the First Amendment. .................................. 6

II.  The equities support a stay. ......................................................................... 10

CONCLUSION ....................................................................................................... 11

CERTIFICATE OF COMPLIANCE ...................................................................... 13

CERTIFICATE OF SERVICE ................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Arcara v. Cloud Books*,
   478 U.S. 697 (1986) ............................................................................................ 7

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) ............................................................................................ 9

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) ............................................................................................ 9

*Doran v. Salem Inn*,
   422 U.S. 922 (1975) ........................................................................................ 5, 6

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ............................................................................................ 4

*For Your Eyes Alone v. City of Columbus*,
   281 F.3d 1209 (11th Cir. 2002) .......................................................................... 5

*Harris v. Evans*,
   20 F.3d 1118 (11th Cir. 1994) ........................................................................ 2, 4

*Leonard v. Ala. State Bd. of Pharm.*,
   61 F.4th 902 (11th Cir. 2023) ......................................................................... 4, 5

*Mata Chorwadi v. City of Boynton Beach*,
   66 F.4th 1259 (11th Cir. 2023) ........................................................................... 3

*NetChoice v. Fitch*,
   2025 WL 1709668 (S.D. Miss. 2025) ................................................................ 1

*NetChoice v. Griffin*,
   2025 WL 978607 (W.D. Ark. 2025) .................................................................. 1

*NetChoice v. Reyes*,
   748 F. Supp. 3d 1105 (D. Utah 2024) ................................................................ 1

*NetChoice v. Skrmetti*,
  2025 WL 1710228 (M.D. Tenn. 2025) ................................................................... 11

*NetChoice v. Yost*,
  2025 WL 1137485 (S.D. Ohio 2025) ...................................................................... 1

*New Ga. Project v. Att'y Gen.*,
  106 F.4th 1237 (11th Cir. 2024) ............................................................................ 5

*New Ga. Project v. Raffensperger*,
  976 F.3d 1278 (11th Cir. 2020) ............................................................................ 8

*TikTok v. Garland*,
  145 S. Ct. 57 (2025) ................................................................................. 1, 6, 8, 9

*Tokyo Gwinnett v. Gwinnett Cnty.*,
  940 F.3d 1254 (11th Cir. 2019) ............................................................................ 5

*U.S. v. Playboy Ent.*,
  529 U.S. 803 (2000) ............................................................................................ 8

*Virginia v. Am. Booksellers*,
  484 U.S. 383 (1988) ............................................................................................ 3

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ............................................................................................ 8

*Young Apartments v. Town of Jupiter*,
  529 F.3d 1027 (11th Cir. 2008) ......................................................................... 3, 4

**INTRODUCTION**

Plaintiffs retreat from the district court's decision. They do not dispute that the court departed from the standard for intermediate scrutiny, subjecting HB3 to something more like strict scrutiny. Nor do they dispute that the court substituted its own policy judgments for the Legislature's in determining that its hypothesized alternatives would be "best or most appropriate." *TikTok v. Garland*, 145 S. Ct. 57, 71 (2025). Instead, Plaintiffs say the court should have applied strict scrutiny anyway for reasons not even the district court found persuasive. Resp. 10.

Rather than defend the district court's analysis, Plaintiffs mischaracterize HB3 and invoke district-court opinions from other circuits that "enjoined state efforts to restrict minors' access to 'social media platforms.'" Resp. 7. HB3 does not "completely bar[]" children from social media. Resp. 1. It imposes only a "conditional" restriction on certain platforms' contracting with kids if the platforms choose to deploy addictive features. *TikTok*, 145 S. Ct. at 71. The district-court opinions that Plaintiffs trumpet considered different statutory schemes and all applied *strict scrutiny*. *See NetChoice v. Fitch*, 2025 WL 1709668, at *8 (S.D. Miss. 2025); *NetChoice v. Griffin*, 2025 WL 978607, at *10 (W.D. Ark. 2025); *NetChoice v. Yost*, 2025 WL 1137485, at *17 (S.D. Ohio 2025); *NetChoice v. Reyes*, 748 F. Supp. 3d 1105, 1121 (D. Utah 2024). Plaintiffs' attempt to seek

1

refuge in strict scrutiny lays bare that the district court's intermediate-scrutiny analysis is indefensible.

Plaintiffs fare no better on standing and *Younger*. They have no answer to *Harris v. Evans*, 20 F.3d 1118 (11th Cir. 1994) (en banc), which forecloses their and the district court's theory that they can assert the First Amendment rights of third parties who suffer no hindrance in asserting their own rights. Nor do Plaintiffs cite any cases concluding that proceedings of substance on the merits occurred under *Younger* when litigation was still at the pleadings stage and the court issued no merits rulings.

The preliminary injunction should be stayed.

## ARGUMENT

### I. FLORIDA IS LIKELY TO SUCCEED ON APPEAL.

#### A. Plaintiffs lack prudential standing to assert the First Amendment rights of children.

Plaintiffs identify no prudential-standing exception that allows them to assert the First Amendment rights of children. Rather than make a case for third-party standing or overbreadth, they rattle off theories that they need not satisfy those exceptions. This Court's precedent forecloses each theory.

Start with their and the district court's "truncated" third-party-standing test. Mot. 10. Plaintiffs do not dispute that children face no hindrance to asserting their own rights—the requirement this Court has said "is the central consideration in the grant of third party standing" even in the First Amendment context. *Harris*, 20 F.3d at 1124.

2

Plaintiffs simply claim that they need not show hindrance "where the First Amendment is involved," ignoring that *Harris* rejects that. Resp. 16.

They also claim that they need not show hindrance because HB3 directly regulates their members. *Id.* But this Court's precedent also forecloses that theory. *See Young Apartments v. Town of Jupiter*, 529 F.3d 1027, 1041-42 (11th Cir. 2008) (applying the traditional third-party-standing test, including the hindrance requirement, to a directly regulated business).

Unable to establish third-party standing, Plaintiffs gesture at the overbreadth doctrine.[1] Resp. 14-15. Although overbreadth sometimes permits litigants suffering no First Amendment violation to assert the rights of third parties, this Court has made clear that it applies only when the challenged statute regulates those third parties. *Mata Chorwadi v. City of Boynton Beach*, 66 F.4th 1259, 1265 (11th Cir. 2023). HB3 cannot "be enforced against [children], so [Plaintiffs] cannot rely on the overbreadth doctrine" to assert their rights. *Id.* Having no answer to *Mata Chorwadi*, Plaintiffs turn to *Virginia v. American Booksellers*, 484 U.S. 383 (1988), stating that the law there also did not regulate the third parties. Resp. 14-15. But the plaintiffs in *Mata Chorwadi* made the same argument, and this Court rejected it. *See* Init. Br. 38-39, No. 20-14694 (11th Cir.), 2021

---

[1] Plaintiffs express bewilderment at the term "overbreadth standing," Resp. 16, even though it is well-established that, when applicable, overbreadth serves as an exception that provides prudential standing to assert third-party rights. *See CAMP Legal Def. Fund v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006).

3

WL 1761923. Plaintiffs misstep—and the district court erred—in setting aside *Mata Chorwadi*. *See* DE71 at 63:20-23 (criticizing this Court's "standing" jurisprudence); *accord* DE72 at 2; Resp. 4-5.

At any rate, this case is not like *American Booksellers*. This Court has recognized that a business "should not be permitted to attack a" law "on behalf of its" customers if the law is "generally intended to protect the health and safety of" the customers "against" the business. *Young Apartments*, 529 F.3d at 1043. Unlike in *American Booksellers*, that is the case here, because HB3 protects children from harms inflicted by platforms' use of manipulative design features. Children—unlike tech companies that profit off behavioral addiction—may "like" a policy that allows them to access social media without being exposed to the features, *Harris*, 20 F.3d at 1123, considering that many children report feeling "manipulated" and "addicted" by them. Mot. 4. "[T]he standing doctrine serves to protect the 'autonomy'" of children to decide for themselves whether to challenge that policy. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379-80 (2024).

## B. *Younger* bars Plaintiffs' First Amendment challenge.

Plaintiffs cling to the abuse-of-discretion standard in defending the district court's *Younger* ruling. *See* Resp. 17. "[B]ut it is always an abuse of discretion for a court to [wrongly] apply" the law, which the court did in determining that substantial proceedings on the merits occurred before Florida sued Snap. *Leonard v. Ala. State Bd. of Pharm.*, 61 F.4th 902, 907 (11th Cir. 2023). Substantial merits proceedings have not

4

taken place when a case is still at the pleadings stage and the court has made no merits rulings.

Plaintiffs emphasize that this case was pending for several "months," the district court "resolved[] two motions," and the parties took limited depositions of each other's preliminary-injunction "declarants." Resp. 17-18. But *Younger* is not a numbers game: It does not "focus" on the "raw time" a case has been pending or the number of depositions. *New Ga. Project v. Att'y Gen.*, 106 F.4th 1237, 1244 (11th Cir. 2024). The question is whether the district court "meaningfully engaged the merits." *Id.* Plaintiffs say it did, relying on *Tokyo Gwinnett* and *For Your Eyes Alone*. Resp. 18-19. But they repeat the district court's mistake: They ignore that in those cases, this Court stressed that the litigation had proceeded past the pleadings stage before the state action began. *See Tokyo Gwinnett v. Gwinnett Cnty.*, 940 F.3d 1254, 1272 (11th Cir. 2019); *For Your Eyes Alone v. City of Columbus*, 281 F.3d 1209, 1218 (11th Cir. 2002).

Alternatively, Plaintiffs argue that *Younger* should not apply because Florida brought its enforcement action in "bad faith." Resp. 20. Yet the district court expressly found otherwise. DE94 at 12 n.5. It was not bad faith for Florida to enforce its law against a business openly violating it. *Leonard*, 61 F.4th at 912 ("[T]he bad-faith exception" applies only if the enforcement action was "brought without a reasonable expectation of" success.). Snap chose to violate HB3 "rather than awaiting the normal development of [this] lawsuit." *Doran v. Salem Inn*, 422 U.S. 922, 929 (1975). "Having"

5

done so, Snap and its trade associations "cannot . . . complain" about their "constitutional contentions [being] resolved in a state court." *Id.*

### C. HB3 does not violate the First Amendment.

Plaintiffs do not even engage with the Supreme Court's test for whether a law triggers First Amendment scrutiny. And even assuming HB3 does, Plaintiffs all but abandon the district court's intermediate-scrutiny analysis. They instead say the court should have applied strict scrutiny—an argument even the district court rejected because HB3 is plainly content-neutral.

**1.** Plaintiffs argue that heightened scrutiny applies because HB3 prohibits "'conduct' necessary to access speech." Resp. 8. That "approximate[s] a claim that" HB3 "disproportionate[ly] burden[s]" expression. *TikTok*, 145 S. Ct. at 66. Yet Plaintiffs' strained attempt to distinguish *TikTok* proves that HB3 does not disproportionately burden expression. They claim that even though the law in *TikTok* "ultimately" banned access to TikTok, it did not regulate "access to expressive activity" because that ban was just an "incidental effect" of TikTok's decision not to divest. Resp. 9. That is precisely the point. That HB3 may "ultimately" prohibit some platforms from entering account-holder contracts with children is an "incidental effect" of platforms' choice to use addictive features. Just like TikTok could have avoided the ban by divesting, platforms can avoid HB3's contract restrictions by dropping their addictive

6

features. Plaintiffs have never claimed—nor could they—that children have an expressive interest in the addictive features themselves.

But none of that matters, Plaintiffs say, because platforms are "speech forums" and so any "access" restriction, even if triggered only by platforms' *own decision* to "use certain features," "is still a restriction on speech." Resp. 9-10. On top of contradicting Plaintiffs' own description of *TikTok*, that position is startling. As Plaintiffs would have it, if a business sells a speech product, the First Amendment protects all commercial activity related to the product. If a newspaper laced its pages with LSD to hook children, the State would have to survive heightened scrutiny to prevent sales to children until the newspaper removed the LSD. That is not the law. *See Arcara v. Cloud Books*, 478 U.S. 697, 707 (1986).

**2.** Regardless, HB3 survives heightened scrutiny. Rather than meaningfully defend the district court's intermediate-scrutiny analysis, Plaintiffs fall back to arguments for strict scrutiny that the court rejected. They concede that HB3 "does not single out any speech," Resp. 12, yet they contend that HB3 is content-based because the Legislature secretly intended to target speech with "'social' subject matter," Resp. 10—whatever that means. That is so, we are told, because HB3 applies only to platforms that "permit users to 'upload content or view the content or activity of other[s],'" which does not include, Plaintiffs speculate, services like "Disney+." *Id.* But Plaintiffs do not explain why only "social" speech can be "uploaded" or "viewed." And

7

even if HB3 did single out "social" speech, such speech "can touch on any conceivable topic, message, or idea." DE94 at 38.

On intermediate scrutiny, Plaintiffs have little to say. They ignore that a law survives intermediate scrutiny if it serves the State's interest "in a direct and effective way," and the Legislature "could reasonably have determined that its interests overall would be served less effectively without" the law. *Ward v. Rock Against Racism*, 491 U.S. 781, 800-01 (1989). Plaintiffs do not even attempt to refute that the district court shirked that standard and conjured strict scrutiny. That alone warrants a stay. *See New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1280 (11th Cir. 2020) (granting stay "because the district court did not properly apply the appropriate framework").

Even so, Plaintiffs tread down the same path as the district court. They too "parade a series of alternatives," *TikTok*, 145 S. Ct. at 71, such as trusting platforms to use effective parental controls and funding a public "campaign promoting them." Resp. 13 (relying on *U.S. v. Playboy Ent.*, 529 U.S. 803 (2000)—a strict-scrutiny case). That ignores that the mere existence of less restrictive alternatives cannot invalidate a law under intermediate scrutiny. *TikTok*, 145 S. Ct. at 70. Even more so here since Plaintiffs have never rebutted Florida's evidence that the alternatives are ineffective. Mot. 6. And Plaintiffs' point that HB3 is supposedly "underinclusive," Resp. 12, is likewise irrelevant

to intermediate scrutiny.[2] *See TikTok*, 145 S. Ct. at 70; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 297 (1984).

Plaintiffs focus almost entirely on those strict-scrutiny points, bypassing the questions that drive intermediate-scrutiny analysis. Nowhere do Plaintiffs claim that HB3 is not a "direct and effective way" of achieving the State's interest in protecting children from addiction and associated mental-health harms. *TikTok*, 145 S. Ct. at 70. They never argue that the Legislature could not have reasonably determined that HB3 is more effective at preventing those harms than parental controls or a "campaign." Resp. 13. Indeed, Plaintiffs insist that leaving it up to parents "is not how one addresses a serious social problem." *Id.* (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011)). Nor do Plaintiffs contest that HB3 "leave[s] open ample" channels for children to communicate on the internet. *Clark*, 468 U.S. at 293.

Running from intermediate scrutiny's more deferential tailoring analysis, Plaintiffs pivot and attack Florida's interest despite disclaiming any such attack below. DE51-10 at 17 (Plaintiffs representing that they were "assuming" Florida's interest and arguing only that "HB3 is just not narrowly tailored"). Plaintiffs concede that Florida

---

[2] Moreover, Plaintiffs' assertion that children who access social media without an account might still encounter addictive features ignores that platforms' contracts contribute to the features' addictiveness. The contracts require children to agree to platforms' collecting their personal data, DE51 at 19, which platforms leverage to maximize the features' effectiveness. *See* DE51-2 ¶ 19 (pairing the "features" with "highly interactive" technology contributes to "behavioral addiction").

has a "legitimate interest in protecting minors" from addiction, but they say this interest is not valid because it seeks to prevent addiction to "speech products" and so is "[]related to the suppression of expression." Resp. 1, 11. The district court rightly recognized the distinction between suppressing speech and "regulating the use of [addictive] features." DE94 at 41. States have a legitimate interest in regulating features "that are designed and operate to undermine a person's ability to exercise their will in determining the amount of time that they choose to spend engaging with an activity, whether that activity involves speech or not—particularly when that person is a minor with heightened susceptibility to such features." *Id.*

Children are suffering untold harm from intentionally addictive design features. Plaintiffs do not dispute that. Florida has a compelling interest in stopping that harm, and it has done its level best to do so through a content-neutral regulation aimed at the features and limited to platforms posing the greatest risk to children. Florida's evidence—which Plaintiffs did not rebut—confirms that. *See* DE51-2 ¶ 10; DE51-1 ¶ 6; DE51-9 at 15. HB3 is a valid exercise of the Legislature's power.

## II. THE EQUITIES SUPPORT A STAY.

Plaintiffs contend that even if Florida is likely to succeed on appeal, the injunction should remain because Florida "stay[ed] enforcement" while Plaintiffs' first preliminary-injunction motion was pending. Resp. 21-22. Even putting aside that an injunction against a likely constitutional law always irreparably harms the State, Plaintiffs

neglect that their own strategic delay necessitated the stay. Plaintiffs waited seven months after HB3's passage and challenged the law just two months before its effective date. They then asked the district court to enjoin HB3 before it went into effect, DE4 at 2, and used that manufactured urgency to resist adversarial testing of their evidence. *See* DE25 at 3 (Plaintiffs stating that if Florida "stay[ed] enforcement," they would be "willing" to produce their declarants for depositions and agree to a schedule that accommodated "limited" discovery). Florida's reluctant agreement to a brief enforcement pause so it could meaningfully defend HB3 does not undermine the harm of a potentially years-long universal injunction against a valid law.[3]

## CONCLUSION

The preliminary injunction should be stayed.

---

[3] Nor will the sky fall for social-media users if HB3 goes back into effect. Resp. 21. Users were not "cut off" previously, *id.*, and Plaintiffs cannot rely on purported harm to third parties anyways. *NetChoice v. Skrmetti*, 2025 WL 1710228, at *9 (M.D. Tenn. 2025).

Dated: June 23, 2025								Respectfully submitted,

																			JAMES UTHMEIER
																			  *Attorney General of Florida*

																			*/s/ Kevin A. Golembiewski*
																			JEFFREY PAUL DESOUSA
																			  *Acting Solicitor General*
																			KEVIN A. GOLEMBIEWSKI
PL-01, The Capitol												  *Senior Deputy Solicitor General*
Tallahassee, FL 32399-1050								DARRICK W. MONSON
(850) 414-3300														  *Deputy Solicitor General*
*kevin.golembiewski@myfloridalegal.com*		ROBERT S. SCHENCK
																			  *Assistant Solicitor General*
																			ANITA PATEL
																			  *Special Counsel*

12

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,599 words.

2. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Kevin A. Golembiewski*  
Senior Deputy Solicitor General

## CERTIFICATE OF SERVICE

I certify that on June 23, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Kevin A. Golembiewski*  
Senior Deputy Solicitor General